UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN LEE HORN, III,

                Plaintiff,                Civil Action No. 22-11637

v.                                            Judith E. Levy
                                                United States District Judge

HEIDI WASHINGTON, *et al.*,        David R. Grand
                                                   United States Magistrate Judge

                Defendants.
_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S
"MOTION FOR A[N] INJUNCTION" (ECF No. 40)**

**I.    REPORT**

      **A.    Background**

On July 11, 2022, *pro se* plaintiff Stephen Lee Horn ("Horn"), an incarcerated person under the custody of the Michigan Department of Corrections ("MDOC"), filed a civil complaint under 42 U.S.C. § 1983 against numerous individuals and entities, including, in relevant part, the following MDOC officials: Director Heidi Washington, Warden Les Parish, Food Service Director Robert Mulligan, and Food Service Supervisor Kevin Bushroe (collectively, "MDOC officials"). (ECF No. 1).

Horn's complaint arises from an injury he sustained while working as a food service worker at the Charles E. Egeler Reception and Guidance Center in Jackson, Michigan ("RGC"). (*Id.*). Horn alleges that on February 9, 2022, his RGC supervisor gave him a meat slicer to fulfill his task of cutting cabbage. (*Id.*, PageID.6, 11). When Horn began

using the machine, the handle slipped or the bar gave way, and it sliced off the tip of Horn's left, middle finger. (*Id.*, PageID.6, 10-12).

A correctional officer transported Horn to a hospital where a doctor applied Dermabond to his finger without taking x-rays. (*Id.*, PageID.7). Horn was later transferred to the G. Robert Cotton Correctional Facility ("JCF"), where he complained of pain in his hand. (*Id.*, PageID.9). On March 8, 2022, the Dermabond came off the finger, along with a piece of metal that was embedded in Horn's finger or hand. (*Id.*, PageID.7, 10-11). Horn seeks money damages and other relief in his complaint. (*Id.*, PageID.12).

On March 20, 2023, the MDOC officials filed a motion for summary judgment or to dismiss. (ECF No. 31). In their motion, the MDOC officials allege that Horn failed to adequately demonstrate that each named defendant was personally involved in the alleged unconstitutional conduct and that Horn failed to exhaust his administrative remedies against them. (*Id.*, PageID.131). Horn requested additional time to respond to the MDOC officials' summary judgment motion, which request the Court granted. (ECF Nos. 37, 38). On May 2, 2023, Horn timely filed his response, with supporting exhibits. (ECF Nos. 38, 39).[1] Horn's filing is seventy-nine pages long; it includes an eighteen-page handwritten response brief, copies of grievance paperwork and decisions in other cases pulled from LEXIS, a "Respon[se] to [the MDOC officials'] Concise Statement of Issues Presented," and a list of the "Controlling or Most Appropriate Authority." (ECF No. 39).

---

[1] The docket shows that Horn's response was filed on May 8, 2023, but under the prison "mailbox rule," his response was filed no later than May 2, 2023 – its postmark date. (ECF No. 39, PageID.278).

2

Despite having filed this lengthy, detailed response, on May 15, 2023, Horn filed a Motion for a[n] Injunction," alleging that he had been transferred to the Marquette Branch Prison ("MBP") in Marquette, Michigan, on April 21, 2023, and that the materials and assistance available there were hindering his ability to litigate his case. (ECF No. 40, PageID.279). In that motion, Horn requests that the Court order MBP to assist in his litigation by supplying him with a typewriter and copies of paperwork associated with his claim, or, alternatively, whatever other relief the Court deems fit. (*Id.*, PageID.280). On May 26, 2023, the MDOC officials filed a response in opposition to Horn's motion. (ECF No. 43).

### B. Applicable Legal Standards

The Court will construe Horn's motion as seeking a preliminary injunction. Preliminary injunctions are intended to "preserve the relative positions of the parties until further proceedings on the merits can be held." *Koetje v. Norton*, No. 13-12739, 2013 WL 8475802, at *2 (E.D. Mich. Oct. 23, 2013). They are not "awarded as of right" and are regarded as "extraordinary and drastic remed[ies]." *Robinson v. Long*, 814 F. App'x 991 (6th Cir. 2020) (quoting *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)).

Accordingly, it is the moving party's burden to justify the relief sought. *Platt v. Bd. of Com'rs on Grievances and Discipline of Ohio S. Ct.*, 769 F.3d 447, 450 (6th Cir. 2014). A court evaluates four factors to determine if a preliminary injunction is justified: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest

would be served by the issuance of the injunction." *Robinson*, 814 F. App'x at 994. The decision to grant such relief is within the district court's discretion. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007).

Additionally, where an inmate seeks to enjoin prison officials, the court must proceed with the utmost care and be cognizant of the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432, 438 (6th Cir. 1984); *see also McKune v. Lile*, 536 U.S. 24, 37 (2002) ("'Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government.' To respect these imperatives, courts must exercise restraint in supervising the minutiae of prison life.") (quoting *Turner v. Safley*, 482 U.S. 78, 84-85 (1987) (internal citations omitted)). Thus, courts afford great deference to prison administrators' "adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Griffin v. Berghuis*, 563 F. App'x 411, 417 (6th Cir. 2014) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

C. **Analysis**

In this case, an analysis of the preliminary injunction factors favors denying Horn's motion. With respect to the first factor, Horn has not established a strong likelihood of success on the merits of his request. Horn points to no law that would require the MDOC to provide him with a typewriter. Indeed, a prisoner's right of access to the courts requires states to provide inmates with "'paper and pen to draft legal documents, notarial services

4

to authenticate them, and . . . stamps to mail them,'" but "[t]he required tools do not include a typewriter." *Ford v. Kennerly*, No. 1:16-CV-243, 2016 WL 3049311, at *27 (W.D. Mich. May 31, 2016) (internal citations omitted). *See also Ryan v. Michigan Dep't of Corr.*, No. 19-12286, 2022 WL 1652305, at *6 (E.D. Mich. May 24, 2022) ("The law does not require MDOC to pay for [a prisoner's] legal supplies.").

With respect to the second factor, Horn has not demonstrated that he will suffer irreparable harm without immediate injunctive relief. While Horn alleges he is unable to adequately litigate his case from MPB without access to a typewriter, copies of paperwork associated with his case, or other legal assistance (ECF No. 40, PageID.280), as noted above, Horn, while in custody *at that facility*, filed an extensive brief with relevant exhibits and copies of cases he contends are persuasive authority in support of his position. (ECF No. 39). The law is clear that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Annabel v. Frost*, No. 14-10244, 2017 WL 4161107, at *4 (E.D. Mich. Sept. 20, 2017), *aff'd*, No. 17-2263, 2018 WL 5295887 (6th Cir. Aug. 10, 2018) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). Horn has not established that "the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* Moreover, Horn does not currently have any imminent due dates before the Court. *See Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991) (requiring that to obtain an injunction, "the harm alleged must be both certain and immediate, rather than speculative or theoretical"). Therefore,

Horn has not established that absent the requested injunctive relief, the risk of harm is certain and immediate.

The final two factors also favor denying Horn's motion for injunctive relief. The Sixth Circuit has established that "problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts." *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997); *see also Turner*, 482 U.S. at 89 (federal courts should defer to prison officials' judgments on prison administration issues). The MDOC officials demonstrated in their response that "the materials and assistance Horn seeks are largely set forth in MDOC Policy Directives." (ECF No. 43, PageID.291). The Policy Directive ("P.D.") titled "Prisoner's Access to the Courts" states, in pertinent part, inmates "must be provided means for filing a lawsuit" (such as writing materials, with no reference to a typewriter or computer); inmates may obtain copies from the photocopying service for ten cents per copy (if the copy is necessary to the lawsuit and the inmate cannot afford the fee, the inmate may obtain a loan from the prison);[2] and inmates may be provided a legal writer only if they meet the requirements for eligibility. P.D. 05.03.116 (effective Apr. 5, 2021).

To the extent Horn believes he is being denied something in violation of MDOC Policy, the Policy Directive titled "Prisoner/Parolee Grievances" further states the appropriate remedy would be to file a grievance. P.D. 03.02.130 (effective Mar. 18, 2019).

---

[2] Relevant to Horn's assertion that law library staff regulated what documents could be copied and how many copies could be made, the Policy Directives state that inmates may be required to present documentation to enable the staff to determine the requested copies are necessary. (ECF No. 40, PageID.280).

6

MBP's conditions that Horn challenges are applicable to all inmates at MBP, and similar conditions are imposed on inmates throughout MDOC facilities. Thus, an injunction ordering Horn to be treated differently than other similarly situated inmates would negatively impact prison officials' ability to administer the prisons and would not serve the public interest. *Szydlek v. Curtin*, No. 2:12-CV-14670, 2013 WL 5728109, at *2 (E.D. Mich. Oct. 22, 2013).

Moreover, "[w]hen an injunction is sought by an inmate against state prison officials, the Sixth Circuit has noted that findings of fact in support of any granted relief are 'especially critical' since such an order would necessarily intrude 'significantly into the prerogatives of state correctional officials.'" *Huber v. Nolan*, No. 1:19-CV-224, 2019 WL 2314630, at *3 (S.D. Ohio May 31, 2019) (quoting *Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988) and citing *Kendrick*, 740 F.2d at 438, n. 3). Here, Horn has failed to provide the Court with sufficient evidence from which it could find that the requested injunction is warranted, and his requests, by their very nature, intrude on the prison's ability to make decisions regarding the custody and care of its prisoners.

In short, since Horn failed to meet his "heavy burden," his request for injunctive relief should be denied. *See Beeler v. Deutsche Bank Natl. Tr. Co.*, No. 2:08-CV-10634, 2008 WL 495482, at *2 (E.D. Mich. Feb. 21, 2008).

## II.     RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's "Motion for a[n] Injunction" **(ECF No. 40)** be **DENIED**.

Dated: June 14, 2023  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 14, 2023.

                                        s/Eddrey O. Butts
                                        EDDREY O. BUTTS
                                        Case Manager