UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN LEE HORN, III,

                 Plaintiff,

v.

HEIDI WASHINGTON, *et al.*,

                 Defendants.

_____/

Civil Action No. 22-11637

Judith E. Levy
United States District Judge

David R. Grand
United States Magistrate Judge

**REPORT AND RECOMMENDATION TO GRANT THE MDOC
DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY
JUDGMENT ON THE BASIS OF EXHAUSTION (ECF No. 31)**

I.    **REPORT**

    A.    **Background**

On July 11, 2022, *pro se* plaintiff, Stephen Lee Horn, III ("Horn"), an incarcerated person, filed a 42 U.S.C. § 1983 action against several defendants, including Heidi Washington, the Director of the Michigan Department of Corrections ("MDOC"), Les Parish, the Warden of the Charles E. Egeler Reception & Guidance Center ("RGC"), Robert Mulligan, the Food Service Director at RGC, and Kevin Bushroe,[1] the Food Service Supervisor at RGC (collectively, the "MDOC Defendants").[2]  Pursuant to 28 U.S.C. §

---

[1] In his complaint, Horn mistakenly identified Bushroe as "Brushwick."  (ECF No. 1).

[2] Horn also named a few other defendants in his complaint, but following a series of rulings by the Court, the only remaining defendants in addition to the MDOC Defendants are Dr. Danielle Gooding (identified on the docket as "Doctor of JCF") and two John Does.

636(b), all pretrial matters have been referred to the undersigned.  (ECF No. 18).

Horn alleges that, on February 9, 2022, he was working in the Food Service Department at RGC when he told Supervisor Bushroe that his daily assignment "was cutting up cabbage."  (ECF No. 1, PageID.6).  According to Horn, Bushroe "g[a]ve [him] the meat slicer [and Bushroe] didn't check to see if anything was wrong with [it]."  (*Id.*).  Horn further alleges that, as he was using the slicer, the "machine bar gave way" and he was "pulled into the meat slicer," cutting off a piece of a finger on his left hand.  (*Id.*, PageID.6, 11).  Horn reported his injury to Supervisor Bushroe and was taken to MDOC's Duane Waters Health Center ("DWH") immediately for treatment.  (*Id.*, PageID.11).  Horn alleges that when he showed Bushroe "the part that was broke[n]," Bushroe responded, "the hand does that some time[,] all you have to do is screw it in . . ."  (*Id.*).  Horn blames Bushroe for instructing him to use the meat slicer, and blames the other MDOC Defendants for allowing food stewards not to "follow procedures" and not to train inmates on use of "dangerous machinery."

Horn also alleges that an unnamed doctor at DWH inspected his finger, applied an adhesive to the wound, and sent him back to RGC.  (*Id.*).  Horn alleges that the doctor did not properly examine his wound and did not take any x-rays and that, as a result, a piece of metal remained in his wound, causing extreme pain, until it fell out on March 4, 2022 (after he had been transferred to the G. Robert Cotton Correctional Facility ("JCF")).  (*Id.*, PageID.11-12).

While Horn characterizes his claims against the MDOC Defendants as violations of

various Amendments to the United States Constitution[3] and state law rights, for purposes of this Report and Recommendation the important detail is that his claims against the MDOC Defendants all relate to the initial incident at RGC, when he cut off the tip of his finger in the meat slicer.[4]  Horn blames Supervisor Bushroe for improperly directing him to use the meat slicer without checking it first, knowing it was not in good working condition.  (*Id.*, PageID.6, 11).  His claims against the other MDOC Defendants are less direct, but still clearly relate to his use of the meat slicer while at RGC.  He blames Director Washington for "allow[ing] food stewards working for [RGC] to not follow 'procedures'"

---

[3] Horn specifically mentions "due process," and the Eleventh and Fourteenth Amendments, but in reality his claim seems to be that the MDOC Defendants violated his rights under the Eighth Amendment, which "prohibits conduct by prison officials that involves the 'unnecessary and wanton infliction of pain.'"  *Brent v. McQuiggin*, No. 2:09-CV-168, 2010 WL 3720010, at *2 (W.D. Mich. Sept. 17, 2010)  (quoting *Ivey v. Wilson,* 832 F.2d 950, 954 (6th Cir.1987)).  As explained in *Brent*, while "accidents, mistakes, and other types of negligence are not constitutional violations merely because the victim is a prisoner," where a prison official engages in a "conscious disregard of a substantial risk of harm," such as "the intentional placement of a prisoner in dangerous surroundings" or "knowingly compel[ling them] to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or health," the plaintiff may be able to show that the official acted with "deliberate indifference," in violation of the Eighth Amendment.  *Brent*, 2010 WL 3720010, at *2 (citations omitted).  Although the *Brent* plaintiff's Eighth Amendment claim failed because his allegation that "there [was] no structured training program and/or videos and operating manuals on [the] equipment [that harmed him,]" supported only an inference of mere negligence, here, Horn alleges that that a manual existed – he even filed a copy of it on the docket – and was not provided to him, and that Bushroe knew the meat slicer was broken. (ECF No. 1, PageID.11; ECF No. 52).  Thus, at least as to Bushroe, Horn states facts sufficient to allege a plausible Eighth Amendment violation.  Unfortunately for Horn, however, for the reasons discussed below, that alone does not enable him to overcome the MDOC Defendants' dispositive motion.

[4] In an "addendum" to his complaint, Horn wrote that he was unsure whether he had included "page #4 of his civil complaint" – he had – and then goes on to attach a revised version of that page.  (ECF No. 7, PageID.43-44).  In the revised page 4, which the Court will consider as a permissive amendment to his complaint, Horn wrote that in addition to the claims asserted in his original complaint, he was suing because he was deprived of "the right to be educated on being taught to learn how to work machine (meat slicer)," and "the right to read the mannaul [sic] on how machinery works . . ." (*Id.*, PageID.44).

3

and "allow[ing] them not to train inmates on dangerous machinery[] . . ." (*Id.*, PageID.5). He similarly blames Warden Parrish for allowing "his food service staff" "not to train inmates on dangerous machinery[]" or follow "procedures" and "policy," and for not "supervising them correct[ly] . . ." (*Id.*). Finally, Horn claims that Director Mulligan knew he had not been properly trained on how to use the "machine," and asserts that Mulligan should have "let staff know" about his lack of training.[5] (*Id.*, PageID.6).

On March 20, 2023, the MDOC Defendants filed the instant motion to dismiss and/or for summary judgment. (ECF No. 31). In their motion, the MDOC Defendants argue that summary judgment is proper because Horn has failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e)(a). (*Id.*, PageID.141-48). They also argue that Horn has failed to state a claim against Defendants Washington, Parish, and Mulligan because he failed to allege sufficient personal involvement on their part. (*Id.*, PageID.136-40). Horn filed a response to the MDOC Defendants' motion on May 8, 2023 (ECF No. 39), and the MDOC Defendants filed a reply on May 22, 2023 (ECF No. 42).[6]

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. LR 7.1(f). Here, the Court finds that the facts and legal

---

[5] Horn's claims against the non-MDOC Defendants are not germane to this Report and Recommendation and will not be discussed further.

[6] On August 22, 2023, Horn filed a document captioned "1st Motion to Supplement/For Exhibits." (ECF No. 52). In that motion, Horn seeks to present a "Prisoner Food Service Worker Orientation Manual," which he purportedly did not sign, as an exhibit in opposition to the MDOC Defendants' dispositive motion. (*Id.*). Because Horn is proceeding *pro se*, and an in effort to ensure that Horn's claims against the MDOC Defendants are fully considered, Horn's "1st Motion to Supplement/For Exhibits" **(ECF No. 52)** is **GRANTED**.

issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

**B.    Standard of Review**

*1.    Motion to Dismiss*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.   Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).   The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.   Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This tenet, however, "is inapplicable to legal conclusions.  Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading[.]" *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### 2.   *Summary Judgment*

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C.    Analysis

In their motion, the MDOC Defendants argue that Horn failed to properly exhaust his administrative remedies as required by the PLRA, and that Horn failed to allege sufficient personal involvement by certain of the MDOC Defendants.  For the reasons set forth below, the Court agrees.

7

1.   *Horn Failed to Exhaust His Claims Against the MDOC Defendants*

a.   *The PLRA's Exhaustion Requirement*

Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other

Federal law," to challenge his conditions of confinement until all available administrative

remedies have been exhausted.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85

(2006).  This "exhaustion" requirement serves two main purposes: it promotes efficiency

by encouraging the resolution of claims at the agency level before litigation is commenced,

and it protects administrative authority by allowing the agency an opportunity to correct its

own mistakes before being haled into federal court.  *See Woodford*, 548 U.S. at 89.  The

Supreme Court has held that this "exhaustion requirement requires proper exhaustion."  *Id.*

at 93.  Proper exhaustion requires "compliance with an agency's deadlines and other

critical procedural rules."  *Id.* at 90.  Failure to exhaust is an affirmative defense that must

be raised by a defendant, and on which the defendant bears the burden of proof.  *See Jones

v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885,

888 (6th Cir. 2009).

b.   *The MDOC's Exhaustion Procedures*

In determining whether a plaintiff has properly exhausted his claim, the only

relevant rules "are defined not by the PLRA, but by the prison grievance process itself."

*Jones*, 549 U.S. at 200.  In Michigan's correctional facilities, prisoner grievances are

governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances"

(the "Policy").  (ECF No. 31-2.)  A state prisoner must first complete the process outlined

in the Policy – including pursuing a grievance through "all three steps of the grievance

process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ C). The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id*. at ¶¶ Q, W). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id*. at ¶ DD). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id*. at ¶ HH). Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps. (*Id.* at ¶ C).

> c. *Horn Failed to Raise a Genuine Issue of Material Fact as to Whether He Properly Exhausted His Claims Against the MDOC Defendants*

In their motion, the MDOC Defendants argue that Horn did not pursue any grievances against any of them arising out of the incidents alleged in the complaint. (ECF No. 31, PageID.141-48). Under the MDOC's procedural rules, in addition to describing the "facts involving the issue being grieved (i.e., who, what, when, where, why, how)," inmates must include *in the initial grievance* the "[d]ates, times, places, and names of all those involved in the issue being grieved …." (ECF No. 31-2, PageID.155, ¶ S). *See also Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). Here, the MDOC Defendants have attached to their motion a copy of Horn's Step III Grievance Report, which shows that Horn failed to meet these requirements.

The Report, which Horn does not challenge, indicates that he only pursued two

grievances to Step III during the relevant time period – Grievance Nos. JCF-22-03-0475-28i ("JCF-0475") and JCF-22-03-0516-27A ("JCF-0516").  (ECF No. 31-3, PageID.163).[7]

As discussed above, Horn is suing **the MDOC Defendants** based on their alleged wrongdoing **with respect to his use of the meat slicer at RGC**.  *See supra* at 2-3.  However, both the JCF-0475 and JCF-0516 grievances relate to issues he had while housed **at JCF**, not at RGC.  Specifically, in JCF-0475, Horn complained that the requests he made to see a doctor while he was housed *at JCF* were not being addressed:

> I have an injury that occurred at RGC Food Service when the food slicer cut my finger off, and **I started working at this Food Service here at Cotton Facility [JCF]** and the whole tip got ripped off **and [I] wrote to see doctor no answer in pain**.

(ECF No. 31-3, PageID.170 (emphasis added); *see also* ECF No. 1, PageID.20).  And, in explaining the attempt he made to resolve the issue being grieved, Horn noted that he had written to see a doctor while at JCF.  (ECF No. 31-3, PageID.170) ("Wrote kite to see doctor about my finger … that just got injuried [sic] here [*i.e.*, JCF] again in kitchen.").  Similarly, in JCF-0516, Horn grieved the fact that, on March 13, 2022, when he was housed *at JCF*, an officer at that facility wrote him a ticket based on his race:

> This is being written under USC 42 hate crime that this officer wrote a ticket for waiting to see doctor for getting hurt at food service and I could not make it to work because of it but did not write to white inmates tickets can't be around minorities hate crime.

---

[7] Along with his complaint, Horn completed a statement regarding the exhaustion of his administrative remedies.  (ECF No. 1, PageID.13-15).  Although Horn checked boxes indicating he exhausted his claims through the grievance process, he only attached paperwork related to the JCF-0475 and JCF-0516 grievances.  (*Id.*, PageID.20-28).  However, for the reasons discussed herein, neither of those grievances exhausted the specific claims Horn is asserting against the MDOC Defendants in this case.

(*Id.*, PageID.175).  It is clear, then, that neither of these grievances – the only two that Horn pursued through Step III during the relevant period of time – name any of the MDOC Defendants, or even relate to the claims he is asserting against them in this lawsuit.  Thus, Horn did not properly exhaust his administrative remedies with respect to the claims asserted against the MDOC Defendants in his complaint, and he cannot now pursue those claims in federal court.  *See Reed-Bey*, 603 F.3d at 324; *Woodford*, 548 U.S. at 90, 92; *see also Burley v. Michigan Dep't of Corr.*, No. 16-10712, 2016 WL 11259277, at *7 (E.D. Mich. Nov. 30, 2016) ("By naming [the defendant] at only step II of the grievance process, and failing to name [the defendant] at step I, [the plaintiff] has failed to properly exhaust this claim against [the defendant].").

In his response to the MDOC Defendants' dispositive motion, Horn does not dispute that the aforementioned grievances relate to issues he had while housed at JCF, but he asserts that "nothing in [the PLRA] imposes a 'name all defendants' requirement for grievances."  (ECF No. 39, PageID.200, 202).  Citing *Jones*, Horn argues that, at Step I, he did not need to name all of the specific individuals he was grieving.  (*Id.*, PageID.200-04).  Horn's reliance on *Jones* is misplaced.  First, the issue isn't that Horn named only some, but not *all*, of the individuals involved in the incidents at issue in this case.  Rather, the issue is that Horn didn't grieve the salient incidents at all, and consequently, also necessarily failed to name *any* of the individuals involved.  Second, in *Jones*, the United States Supreme Court interpreted an older MDOC grievance policy, which did *not* contain the requirement that all individuals be named at Step I.  In more recent case law, the Sixth Circuit has clarified the general requirement that each of the individuals the inmate wishes

to sue must be named at Step I:

> As the Supreme Court explained in [*Jones*], prisoners must complete the administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself.  Although exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances, a plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures ….

*Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011) (internal quotation marks and citations omitted).  In other words, *Jones* stands for the broad proposition that a grievant's failure to comply with the specific requirements of a prison's grievance procedure defeats a claim of exhaustion.  Since *Jones*, the MDOC has amended its grievance policy to require that a grievant identify, among other things, the names of the individuals and the issue(s) being grieved at Step I.  *See Reed-Bey*, 603 F.3d at 324; *see also Pasley v. Maderi*, No. 13-13251, 2014 WL 5386914, at *4 (E.D. Mich. Sept. 15, 2014) (recognizing that, after *Jones*, the MDOC amended its grievance procedure to require the names "of all those involved in the issue being grieved" to be included in the Step I grievance and dismissing those defendants who were not so named); *Bird v. Mansfield*, No. 12-cv-238, 2013 WL 4782369, at *3 (W.D. Mich. Sept. 5, 2013) (dismissing plaintiff's claim against defendant for failure to exhaust where defendant was not named in Step I grievance).  In short, Horn cannot rely on *Jones* to defeat the MDOC Defendants' valid argument that by failing to name them in his Step I grievances he did not properly exhaust his claims against them.

Finally, Horn argues that his failure to name the MDOC Defendants at Step I is not necessarily fatal to his suit against them, so long as the grievances provided these

individuals with adequate notice of the claims against them.  (ECF No. 39, PageID.206).

While this principle might be accurate as a general rule, *see, e.g., Dykes v. Corizon, Inc.*,

No. 22-cv-00113, 2023 WL 2667496, at *5 (W.D. Mich. Feb. 13, 2023) ("Where the

grievance provides prison officials adequate notice of the claim against the defendant to

allow them to resolve the issue, the failure to name a particular defendant in a grievance is

not fatal.") (internal quotation marks omitted), as discussed above, there is no indication in

either JCF-0475 or JCF-0516 that Horn was asserting *any* claims against any of the *MDOC*

*Defendants*, let alone the ones he asserts in this lawsuit.  Again, in JCF-0475, Horn claimed

that, while at JCF – not RGC – he was denied adequate medical care, and in JCF-0516,

Horn claimed that, while at JCF, he was issued a "ticket" based on race.  (ECF No. 31-3,

PageID.170, 175).  Neither of these grievances would give any of the MDOC Defendants

– Director Washington, RGC Warden Parish, RGC Food Service Director Mulligan, or

RGC Food Service Supervisor Bushroe – notice that Horn was asserting any misconduct

by them, let alone the specific misconduct he alleges against them in this lawsuit related to

his getting injured.  Thus, Horn cannot rely on these grievances to exhaust any claims

against the MDOC Defendants.  *See Harp v. Austin*, No. 21-12446, 2022 WL 3365844, at

*4 (E.D. Mich. July 19, 2022) (dismissal for failure to exhaust was appropriate because the

defendant, not being named in the grievance, "could not have known that she was allegedly

involved in [the] grievance"); *Frisby v. Unknown Cobar*, No. 22-cv-00087, 2023 WL

4872567, at *5-6 (W.D. Mich. May 8, 2023) (plaintiff failed to exhaust grievance against

named defendants where he neither named them in his Step I grievance, nor submitted "any

facts indicating that each Defendant was involved[]," … thus failing to "place the MDOC on notice that his grievance was against the named Defendants").

In sum, because Horn did not name any of the MDOC Defendants in the only grievances he pursued to Step III during the relevant time period, nor allege any misconduct on their part in those grievances, he failed to exhaust his claims against them. Thus, summary judgment should be granted in favor of the MDOC Defendants.

> ### 2. *Horn Failed to Allege Sufficient Personal Involvement by MDOC Defendants Washington, Parrish, and Mulligan*

In their motion, the MDOC Defendants also argue that Horn's complaint fails to allege how Director Washington, Warden Parish, or Food Service Director Mulligan were personally involved in any unconstitutional conduct. (ECF No. 31, PageID.136-40). In order to demonstrate liability under § 1983 as to any particular defendant, a plaintiff must make a clear showing that each defendant was personally involved in the activity that forms the basis of the complaint. *See Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Moreover, § 1983 liability cannot be premised upon mere allegations of *respondeat superior*, *i.e.*, supervisory liability; rather, a defendant can only be liable under § 1983 if the plaintiff shows that he personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Bellamy*, 729 F.2d at 421. A supervisory official's mere awareness of a complaint of allegedly illegal conduct, and his subsequent failure to take corrective action, is insufficient to trigger § 1983 liability. *See Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). Rather,

14

liability under § 1983 must be based upon active unconstitutional behavior, not a "mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

In this case, although defendants Washington, Parish, and Mulligan are mentioned in Horn's complaint, he failed to allege that any of these individuals were *personally involved* in the activity that forms the basis of his complaint (i.e., his operation of the "meat slicer," allegedly at Supervisor Bushroe's direction, and the subsequent injury to his finger). As to Director Washington, Horn alleges only that she "allows food stewards working for [RGC] to not follow 'procedures' to hand out safety manuals [sic] …." (ECF No. 1, PageID.5). Similarly, as to Warden Parish, Horn alleges only that he "did not have his food service staff follow procedures" or "policy," and that Horn "got injured by staff" due to Warden Parish "not supervising them correct" by "not overseeing thru 'policy' and procedure." (*Id.*). And, with respect to Director Mulligan, Horn alleges that "if he would of [sic] just check[ed] all materials [sic] he has in his office or on the computer[,]" he would have known that Horn had never received proper safety training and, thus, "could of [sic] saved [Horn's] finger …." (*Id.*, PageID.6).

Even taking all of these allegations as true, Horn has not alleged that any of these defendants had any *active personal involvement* in his injury; at most, he alleges that they failed to properly supervise subordinates and/or failed to take action that potentially would have resulted in Horn not being injured. As discussed above, however, there is no *respondeat superior* liability in the § 1983 context, *Monell*, 436 U.S. at 691, and a supervisory official's mere awareness of an issue, or her "mere failure to act" on it, does not give rise to § 1983 liability. *See Shehee*, 199 F.3d at 300; *Poe*, 853 F.2d at 429.

15

Moreover, while Horn makes some fleeting references to "policy," he did not allege any specific facts that would support a finding that any of these defendants actually adopted a policy that caused his injury.  Liberally construing Horn's complaint, the closest he comes to pleading a *Monell* policy claim is his allegation that Director Washington "allows food stewards working for [RGC] to not follow 'procedures' to hand out safety manuals, and allows them not to train inmates on dangerous machinery . . ."  (ECF No. 1, PageID.5).  But these allegations are mere conclusory assertions that are insufficient to state a *Monell* claim.  *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 388-89 (6th Cir. 2017); *Rayfield v. City of Grand Rapids*, 373 F. Supp. 3d 962, 977 (W.D. Mich. 2018) ("Conclusory assertions [of a policy or custom] are not enough to state a *Twombly* plausible *Monell* claim.").

For all of these reasons, Horn failed to allege sufficient personal involvement in the alleged constitutional violations on the part of Director Washington, Warden Parish, and Director Mulligan, and his claims against them should be dismissed.

> ### 3. *The Court Should Decline to Exercise Supplemental Jurisdiction over Horn's State Law Claims against the MDOC Defendants and Should Dismiss those Claims Without Prejudice*

To the extent Horn intends to assert any state law claims against the MDOC Defendants – he makes only a few vague, passing references to state law concepts such as "neglect of duty," "negligence," and "gross negligence" (ECF No. 1, PageID.5-6) – the Court should decline to exercise supplemental jurisdiction over those claims and dismiss them without prejudice.  28 U.S.C. § 1367(c)(3).

## II.      RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that the MDOC Defendants'

Motion to Dismiss and for Summary Judgment on the Basis of Exhaustion **(ECF No. 31)**

be **GRANTED**.   Horn's federal claims against the MDOC Defendants should be

**DISMISSED WITH PREJUDICE**, and his state law claims against the MDOC

Defendants should be **DISMISSED WITHOUT PREJUDICE**.


Dated: September 15, 2023                    s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                             United States Magistrate Judge


## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation,

any party may serve and file specific written objections to the proposed findings and

recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D.

Mich. LR 72.1(d)(1).   Failure to timely file objections constitutes a waiver of any further

right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431

F.3d 976, 984 (6th Cir. 2005).    Only specific objections to this Report and

Recommendation will be preserved for the Court's appellate review; raising some

objections but not others will not preserve all objections a party may have. *See Smith v.*

*Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also*

*Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).   Copies of any objections

must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 15, 2023.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager